# EXHIBIT F

**AMERICAN ARBITRATION ASSOCIATION**
**EMPLOYMENT ARBITRATION TRIBUNAL**

| | | |
|---|---|---|
| ROY CONRAD, *Individually and on Behalf of All Others Similarly Situated* | § § § | AAA Case No. 01-16-0004-2469 |
| v. | | |
| SUN COAST RESOURCES, INC., *Respondent* | § | |

## CLAUSE CONSTRUCTION AWARD

The below signed Arbitrator, having been designated in accordance with the arbitration agreement entered into by the above-named parties, and having been duly sworn and having duly heard the proofs, arguments, and allegations of the parties, issues this Clause Construction Award as follows:

Pursuant to AAA Supplementary Rules for Class Arbitrations, Rule 3, this arbitration is stayed for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate the Clause Construction Award.

### Factual and Procedural History

This matter is before the Arbitrator by demand for arbitration filed with the American Arbitration Association (AAA). This demand was accompanied by a Complaint asserting a collective action based on the Fair Labor Standards Act, in which Roy Conrad seeks to maintain an action against Sun Coast on his behalf and on behalf of others similarly situated.

Pursuant to the Employment Arbitration Rules of the AAA, a telephonic hearing on Claimants' Clause Construction Motion was held on July 13, 2017, before neutral arbitrator Thomas J. Crane. Appearing for the Claimant were Robert B. Debes and Ricardo J. Prieto of Shellist Lazarz Slobin, LLP. Appearing for the Respondent was Neil Martin of Gardere Wynn Sewell LLP. The parties agreed to submit their argument via written motions and replies. The matter was taken under advisement pending receipt of the parties' respective briefs.

On July 27, 2017, the Claimant submitted his Motion for Clause Construction Determination to Permit Collective Action Arbitration. On Aug. 17, the Respondent submitted its Response in Opposition to Claimant's Motion. The Claimant then followed with his Reply and the Respondent followed with a letter dated Aug. 18, 2017. The parties have submitted excellent briefing regarding a complicated topic.

1

The employer, Sun Coast Resources, Inc., apparently required employees to agree to an arbitration agreement, identified as the "Mediation and Arbitration Agreement." The parties dispute the meaning of the "Mediation and Arbitration Agreement" which was signed by Sun Coast employees. Sun Coast Resources, Inc. provides fuel and other refined oil products in various states, including Texas. Claimant is a fuel technician and driver. Fuel techs and drivers are required to connect fuel hoses to equipment at a well site for Respondent's customers. Claimant and others similarly situated are required to drive to the work site using company vehicles. The fuel techs and drivers are paid by the hour. Claimant's action is brought on behalf of all hourly paid fuel techs and drivers employed by Respondent in the three years leading up to the filing of the action. Claimant filed his action pursuant to 29 U.S.C. §216(b).

The parties attempted to mediate their dispute on Feb. 20, 2017, but they were not successful. The parties entered into a Tolling Agreement on March 1, 2017 to avoid a lapse in the statute of limitations.

There appears to be no dispute that the named Claimant did sign the Mediation and Arbitration Agreement. The threshold issue lies not in its formation, but in its meaning. Does the Mediation and Arbitration Agreement include collective actions?

The agreement provides:

**"Scope of Mediation and Arbitration Procedure:** As a condition of your employment at Sun Coast, you agree that any controversy or claim arising out of or relating to your employment relationship with Sun Coast or the termination of that relationship must be submitted for non-binding mediation before a third-party neutral mediator and, if necessary, for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and Sun Coast.

*"Claims Covered:* This agreement to submit to mediation and, if necessary, arbitration:

　　i.　Covers any dispute concerning the arbitrability of any such controversy or claim; and
　　ii.　Includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for which the employee has an alleged cause of action, including without limitation claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, discrimination based on sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual orientation, mental or physical disability or medical condition, specifically including claims under The American With Disabilities Act, or any other applicable law, veteran status, or other characteristics protected by statute); claims for wrongful discharge; violations or the Family and Medical Leave Act (FMLA); and/or claims for violation of any federal , state or other governmental law, statute, regulation or ordinance, and whether based on statute or common law."

2

The agreement then adds:

"Disputes covered by this Agreement include all such claims whether made against Sun Coast, any of its subsidiary or affiliated entities, all benefit plans, the benefit plans' sponsors, Sun Coast's individual officers or directors (in an official or personal capacity), and all successors and assigns of any of them."

The agreement then includes a provision which describes four types of claims which are not covered by the agreement, including 1) worker's compensation claims, 2) unemployment compensation claims, 3) a claim by Sun Coast for injunctive relief in regard to alleged unfair competition and disclosure of trade secrets, and 4) a claim based on appeal of denial of employee benefits. The parties agree there are no factual issues regarding construction of the pertinent clauses.

The Claimants argue that the agreement does not exclude collective actions. The Respondent argues that because the agreement does not refer to collective actions or to class actions specifically, it has in effect excluded such actions.

The question of the proper interpretation of the arbitration clause in the contract as allowing, requiring or prohibiting the processing of this matter as a class or collective action is subject to the AAA Supplementary Rules for Class Action (SRCA). Under the SRCA, Rule No. 3, this threshold question is basically a matter of law as to the construction of the clause in this contract in regard to class arbitration. The parties agree there are no factual issues regarding the construction of the arbitration provisions. The parties submitted their briefs and the issue is now before the Arbitrator.

### Standards

As in all arbitrations, we must recognize some basic precepts. First, the basic responsibility and authority of the Arbitrator derives from and is bound by the contract and arbitration clause. *See Grigson v. Creative Artists Agency*, 210 F.3d 532 (5th Cir. 2000) (Finding that only in rare situations would a non-signatory to an arbitration agreement be bound by that arbitration agreement). Second, the goal of arbitration is to give effect to the contractual rights and expectations of the parties. The intentions of the parties control, because an arbitrator derives his/her power from the parties' agreement to forgo the legal process and submit their dispute to private dispute resolution. *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1773-1774, 176 L.Ed.2d 605 (2010). The goal of the Federal Arbitration Act was to place arbitration agreements on equal footing with other agreements. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Arbitration agreements are enforced according to their terms, so as to reflect a liberal federal policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 1745-1746, 179 L.Ed.2d 742 (2011). But, class actions may not always be suited to arbitral actions. *AT&T Mobility*, 131 S.Ct. at 1751.

3

## Discussion

So, have the parties agreed to submit collective actions to binding arbitration? Based on a review of the text of the agreement, they have done so. The agreement provides that "*any* controversy or claim arising out of or relating to your employment relationship with Sun Coast or the termination of that relationship" (emphasis added) must be submitted to arbitration. The agreement also defines the claim as pertaining to any violation of federal law. The actions which must be submitted to arbitration is broadly stated.

The Respondent argues essentially that case law provides that to be included within an arbitration agreement, the parties must specifically so agree. See Respondent's Response, pp. 1-2. The Respondent insists that *Stolt-Nielsen* stands for the proposition that to become the subject of an arbitration, the parties must first agree to that subject or issue. Response, at p. 2. Relying again on *Stolt-Nielsen*, it adds that an "implicit" agreement to arbitrate a class action may not be simply inferred. Response, at p. 3. In that sentence, the *Stolt-Niesen* Court explained that to find class action or a collective action, there must be more evidence of an agreement than the mere fact of the agreement itself. That makes sense. Otherwise, one could infer all sorts of agreements regarding a wide variety of topics simply because the two parties reached one agreement on one topic.

Here, the parties used the broad statement that "any" claim or controversy arising from the employment relationship will be subject to arbitration. The agreement further adds that "any controversy or claim" includes any claim that could be asserted in court based on a violation of any federal statute. That definition clearly would include claims based on the Fair Labor Standards Act.

The agreement is very broad. The employer knew it could carve out certain exceptions. It did expressly carve out from this broad definition the following claims: 1) worker's compensation claims, 2) unemployment compensation claims, 3) a claim by Sun Coast for injunctive relief in regard to alleged unfair competition and disclosure of trade secrets, and 4) a claim based on appeal of denial of employee benefits. It does appear that in *not* carving out collective actions, the parties made a conscious choice.

Too, unlike this matter, the parties in *Stolt-Nielsen* agreed they did not reach an agreement regarding class action arbitration. *Stolt-Nielsen*, 130 S.Ct. at 1766. That is, in *Stolt-Nielsen*, there was no dispute that the arbitration agreement did not actually include class action arbitration. The Supreme Court rightfully found the arbitrator had overstepped his authority in inferring such an agreement in which the parties stipulated to the contrary. Whereas, here, Respondent Sun Coast and Claimant Conrad have disputed whether class actions or collective actions are included within the terms of their agreement.

4

In this agreement, Roy Conrad and Sun Coast Resources agreed to submit "any controversy or claim" to arbitration. That language is comparable to the language in *Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064 (2013). In that case, the parties provided that "no civil action" shall be filed before any court unless it first be submitted to arbitration. *Oxford Health Plans*, 133 S.Ct. at 2067. The language is broad and inclusive. That language bears no suggestion that any particular "civil action" is to be excluded. The *Oxford Health Plans* arbitrator interpreted that language to suggest broad inclusion. And, explained the court, the arbitrator relied on the text to construe the meaning of the language. The arbitrator performed his essential role, simply construing the language of the agreement. As the Supreme Court explained, it does not matter whether the arbitrator was correct, or not correct. If he interprets the language, then he has performed his role pursuant to the agreement. *Oxford Health Plans*, 133 S.Ct. at 2068.

Similarly, this Arbitrator finds the language in the matter at bar to include "any" claim arising from or relating to the employment relationship to be subject to arbitration. The parties have not yet put on any evidence. But, at least on the face of the written "Original Complaint," it appears this dispute arises from and is also related to Mr. Conrad's employment relationship. The *Stolt-Nelsen* decision did not establish that arbitration agreements can only be construed to permit class arbitrations where the agreement expressly permits class arbitrations. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 759 (2d Cir. 2016).

Indeed, the instant agreement provides that at the conclusion of mediation, any remaining dispute may be submitted to AAA for arbitration under its rules for employment disputes. Those AAA rules for employment disputes are incorporated in the Mediation and Arbitration Agreement. See Claimant's Ex. 1, "Mediation and Arbitration Agreement," p. 2.

So far, two courts of appeal have found that the question of the availability of class arbitration is a decision for the arbitrator, not the court, if the agreement is clear. *See Opalinski v. Robert Half International, Inc.*, 761 F.3d 326, 335 (3rd 2014); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). *See, also, Langston v. Premier Directional Drilling, L.P.*, 203 F.Supp.3d 777, 789 (S.D. Tex. 2016 (a broad arbitration agreement or clause to submit to the AAA rules may constitute an agreement to submit that question to an arbitrator). The below signed Arbitrator finds the agreement at bar clearly provides for collective actions.

*AT&T Mobility, supra*, cautions against the use of arbitrations for class actions. Class arbitrations may lack some of the protections found in traditional court litigation. But, the Sun Coast agreement specifically includes all remedies which might be available in court. See Claimant's Ex. 1, "Mediation and Arbitration Agreement," p. 2 of 4. Under the terms of the agreement, the arbitrator is required to apply the governing substantive law applicable to any claim filed pursuant to the agreement. *Id.* Sun Coast drafted the agreement. It could have chosen to carve out an additional exception for class actions and collective actions. That it did not do so is significant. Under Texas law, courts would not

be expected to re-write an agreement after the parties have reached agreed language. *Berman v. Rife*, 644 S.W.2d 574, 576 (Tex.App. Ft. Worth 1982). And, neither should arbitrators be expected to re-write a particular agreement.

The Fifth Circuit has indicated that its decision in *Reed v. Florida Metropolitan Univ., Inc.*, 681 F.3d 630 (5th Cir. 2012) was abrogated by the *Oxford Health Plans* decision. *See Robinson v. J&K Administrative Mgt. Servs.*, 817 F.3d 193, 196 n.1 (5th Cir. 2016) (Finding that no court, including the *Stolt-Nielsen* court, has yet decided whether a court or an arbitrator should decide whether an arbitration agreement is silent on the issue of class arbitration).

### Stay

This Clause Construction Award is stayed pursuant to the AAA Supplementary Rules for Class Arbitrations, R. 3, "for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or vacate this Clause Construction Award. Once all parties inform the arbitrator in writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court."

It is so ordered:

SIGNED this 11th day of September, 2017.

_____
Thomas J. Crane, Arbitrator

6