UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SUN COAST RESOURCES, INC. | § § § | |
| v. | § § | CIVIL ACTION NO. 4:17-cv-03042 |
| ROY CONRAD, Individually and On Behalf of All Others Similarly Situated | § § | |

**SUN COAST RESOURCES, INC.'S MOTION FOR NEW TRIAL, MOTION TO MODIFY JUDGMENT, AND MOTION TO RECONSIDER ORDER CONFIRMING ARBITRATION AWARD**

Pursuant to Federal Rule of Civil Procedure 59, Sun Coast Resources, Inc. files this Motion for New Trial, Motion to Modify Judgment, and Motion to Reconsider Order Confirming Arbitration Award. In support, Sun Coast respectfully shows as follows:

**I. Introduction**

On December 21, 2018, the Court issued its opinion confirming the clause construction award of the American Arbitration Association in case no. 01-16-0004-2469, issued on September 11, 2017. (Dkt. Entry 17) That same day the Court rendered its final judgment, which provides that "Roy Conrad may continue arbitrating as a collective action against Sun Coast." (Dkt. Entry 18) In reaching its decision, the Court does not appear to have considered the fact that class or collective arbitrability is a gateway issue that was presumptively for this Court, not the arbitrator, to decide.[1] The Supreme Court's January 8 decision in *Henry Schein, Inc. v. Archer & White*

---

[1] As discussed below, the arbitrator decided that the parties' agreement was clear in providing he, not a court, should decide the question of individual versus collective arbitration. Because the parties were before the arbitrator when that question arose, Sun Coast presented argument to the arbitrator on that question, deeming that the most expeditious use of time and resources. However, it did not intend to agree that the question was properly decided by him or to be bound by his decision that he (rather than a court) should decide that question. In *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), the Supreme Court sanctioned this approach, concluding that a party does not waive its right to independent review of the arbitrability question by courts by presenting argument to the arbitrator.

*Sales, Inc.*, No. 17-1272, 2019 WL 122164 (U.S. 2019), and its January 15 decision in *New Prime Inc. v. Oliveira*, No. 17-340, 2019 WL 189342 (U.S. 2019), both make clear that these "who decides" issues are of critical importance. Sun Coast was entitled to an independent review of the collective arbitrability issue by this Court, unless it found the parties' agreement "clearly and unmistakably" submitted that question to the arbitrator. Their agreement did not do so. Even if the agreement was ambiguous on this point (and it is not), ambiguity is insufficient to take away this Court's power to decide. Accordingly, the Court did not need to defer to the arbitrator's decision in the first instance. Further, any deference the Court may have owed to the arbitrator's decision was not without limit. The arbitrator exceeded the express limitations of his contractual mandate, ending any judicial deference and warranting vacatur of his award. For these reasons, and those discussed below, Sun Coast respectfully urges the Court to reconsider its December 21 opinion and judgment.

## II. Background

Mr. Conrad and Sun Coast executed a Mediation and Arbitration Agreement. *See* Ex. 1. The Agreement begins, in pertinent part, as follows:

> **Scope of Mediation and Arbitration Procedure**: As a condition of your employment at Sun Coast, you agree that any controversy or claim arising out of or relating to your employment relationship with Sun Coast or the termination of that relationship must be submitted for non-binding mediation before a third-party neutral mediator and, if necessary, for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and Sun Coast.
>
> *Claims Covered*: This agreement to submit to mediation and, if necessary, arbitration:
> 
>     i. Covers any dispute concerning the arbitrability of any such controversy or claim; and
>     ii. Includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for which the employee has an alleged cause of action, including without limitations . . . claims for violation of any federal, state or other governmental law, statute,

>  regulation or ordinance . . . .

*Id.* at pp. 1–2 (underlining added). The Agreement then adds:

> Disputes covered by this Agreement include all <u>such</u> claims whether made against Sun Coast, any of its subsidiary or affiliated entities, all benefit plans, the benefit plans' sponsors, Sun Coast's individual officers or directors (in an official or personal capacity), and all successors and assigns of any of them.
>
> *Claims Not Covered*: Claims covered by this Agreement do not include:
> i. A claim for worker's compensation benefits;
> ii. A claim for unemployment compensation benefits;
> iii. A claim by Sun Coast for injunctive and/or other equitable relief, including without limitation claims for unfair competition and/or the use or unauthorized disclosure of trade secrets or confidential information, for which Sun Coast may seek and obtain relief from a court of competent jurisdiction; and
> iv. A claim based upon Sun Coast's current (successor or future) employee benefits and/or welfare plans that contains an appeal procedure or other procedure for the resolution of disputes under the plan.

*Id.* at pp. 2 (underlining added). Finally, the Agreement provides that "the National Rules for Resolution of Employment Disputes of the AAA" are "incorporated by reference," and that "any conflict between the rules and procedures set forth in the AAA rules and those set forth in this Agreement shall be resolved in favor of those in this Agreement." *Id.* at p. 3. The Agreement, by its express terms, is governed by the Federal Arbitration Act ("FAA"). *Id.* at p. 4.

## II. Argument and Authorities

In enacting the FAA, the "virtues that Congress saw in arbitration" were "its speed and simplicity and inexpensiveness." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018). Class or collective arbitration (as opposed to individual, bilateral arbitration) is "not arbitration as envisioned by the FAA" because it "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348, 351 (2011).

Individual, bilateral arbitration with modest stakes represents a different type of controversy in almost every way from a class or collective arbitration in which an arbitrator may be asked to award potentially ruinous damages without the benefit of meaningful merits review, and the FAA is aimed at protecting agreements to arbitrate using "individualized rather than class or collective action procedures." *Epic Sys. Corp.*, 138 S. Ct. at 1621.

Of course, "parties may and sometimes do agree to aggregation." *Concepcion*, 563 U.S. at 351.  But the FAA "imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  Thus courts may only compel parties to submit to class or collective arbitration if they have affirmatively "agreed to" that procedure. *Id*. at 686 (emphasis omitted).  Courts may not "presume" such consent from "mere silence on the issue of class-arbitration" or infer "[a]n implicit agreement to authorize class-action arbitration from the fact of the parties' agreement to arbitrate." *Id*. at 685, 687.  "[T]he FAA requires more." *Id*. at 687.

When, as in this case, parties disagree as to whether their agreement permits arbitration on a class or collective basis, the question becomes who decides that matter: the arbitrator or the court?  As discussed below, the appellate courts have uniformly recognized the availability of class or collective arbitration represents one of the gateway "questions of arbitrability" which are presumptively reserved "for judicial determination unless the parties clearly and unmistakably agree otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks, alteration, and citation omitted).  "Consequently, any silence, ambiguity or doubts about this question should be resolved in favor of concluding that the parties did not agree to submit the issue to the arbitrator." *General Motors Corp. v. Pamela Equities Corp.*, 146 F.3d

242, 248 (5th Cir. 1998).

Here, the parties' agreement did not clearly and unmistakably provide for the arbitrator to decide the collective action arbitrability question. That was precisely the type of threshold legal question that this Court should have decided independently. Regardless, the arbitrator clearly exceeded the bounds of his authority by deciding the Agreement permitted collective action. His award should be vacated.

**A.      The Court Should Independently Review the Collective Arbitrability Question.**

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal quotation marks and citation omitted). Specifically, "[t]he question whether parties have submitted a particular dispute to arbitration, *i.e.*, the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (internal quotation marks and citation omitted). Virtually every court of appeals has recognized that the availability of class or collective arbitration is presumptively a question of arbitrability for a court, not an arbitrator, to decide. *See, e.g., Catamaran Corp. v. Towncrest Pharmacy,* 864 F.3d 966, 972 (8th Cir. 2017); *Dell Webb Cmty., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016); *Robinson v. J & K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195–96 (5th Cir. 2016); *Eshagh v. Terminix Int'l Co.*, 588 F. App'x 703, 704 (9th Cir. 2014); *Opalinksi v. Robert Half Int'l Inc.*, 761 F.3d 326, 335 (3rd Cir. 2014); *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). As such, courts will only defer on this question to the arbitrator if the parties' agreement "clearly and unmistakably" provides for that. *Howsam*, 537 U.S. 79 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). This

showing is necessary to overcome the "strong pro-court presumption as to the parties' likely intent." *Id.* at 86.

Here, the arbitrator concluded that he was authorized to resolve the gateway collective arbitrability issue because the Agreement contained a "clear" delegation of such authority. *See* Ex. 2 at p. 5. However, the Agreement contains no such delegation, much less a clear and unmistakable one. The Agreement does provide that "any controversy or claim arising from your employment relationship with Sun Coast" must be sent to arbitration (subject to numerous exceptions) and that "any question of the arbitrability of any such controversy or claim" should be decided by the arbitrator. *See* Ex. 1 at pp. 1–2. But it does not delegate the authority to resolve this dispute over collective arbitration. The word "such" in the delegation provision holds the key. The arbitrator was only delegated authority to resolve the arbitrability of "any such controversy or claim," *i.e.*, "any controversy or claim arising out of relating to your employment relationship with Sun Coast or the termination of that relationship." *See id.* (underlining added). Thus, the arbitrator was only given authority to decide bilateral arbitrability issues. Yet Mr. Conrad seeks to adjudicate not only his individual claim, but also claims of other allegedly similarly situated employees. By definition, that assertion presents a question of arbitrability of other employees' claims that the arbitrator was not delegated authority to decide by the parties' Agreement.

Even if the Agreement was ambiguous on who should decide a class or collective arbitrability issue (and it is not),[2] "silence or ambiguity" is insufficient to show that the parties

---

[2] While the Agreement does incorporate the National Rules for Resolution of Employment Disputes of the AAA, this is insufficient to clearly and unmistakably assign to an arbitrator the question whether the Agreement permits class or collective arbitration. *See, e.g., Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 763–65 (3d Cir. 2016). Indeed, the Agreement's plain language calls for individual, bilateral arbitration of an employee's claims (not the claims of a class or collection of employees), and further provides that its provisions control over the AAA rules in the event of conflict. Ex. 1 at p. 3. Thus, this case is easily distinguishable from cases like *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir. 2012), where the Fifth Circuit held the arbitration agreement's reference to the AAA rules constituted a delegation of arbitrability

clearly and unmistakably agreed to arbitrate the arbitrability issue. *First Options*, 514 U.S. at 944–45; *see also, e.g., Pamela Equities Corp*, 146 F.3d at 248. Accordingly, this Court must decide arbitrability just as it would decide any other question that the parties did not submit to arbitration—independently. Indeed, the Supreme Court just remanded a case to the Fifth Circuit to determine in the first instance whether a contract delegated the arbitrability of the "particular dispute." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 WL 122164, at *6 (U.S. Jan. 8, 2019).

In its decision, the Court did not address the threshold "who decides" issue. The Court's opinion begins its analysis with *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013), without considering who should have decided the collective arbitrability issue. (Dkt. Entry 17 at 2) *Oxford Health* itself makes clear that the Court needed to address this disputed issue:

> We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called "question of arbitrability." Those questions—which include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy—are presumptively for courts to decide. <u>A court may therefore review an arbitrator's determination of such a matter de novo absent clear and unmistakable evidence that the parties wanted an arbitrator to resolve the dispute</u>. . . . But this case gives us no opportunity to do so because Oxford agreed [in its brief] that the arbitrator should determine whether its contract with Sutter authorized class procedures.

*Id.* at 569 n.2 (internal quotation marks, citations, and alterations omitted; underlining added). Unlike *Oxford Health*, Sun Coast does not agree that the arbitrator should have the final word on whether its contract authorized collective procedures.

The Court appears to have believed that because Sun Coast presented argument to the

---

to the arbitrator. Unlike the agreement in this case, the arbitration clauses in those cases did not contain any exclusions or conflict language; they were standard broad-form arbitration clauses. Further, cases like *Petrofac* concerned individual, bilateral arbitrations and thus carry little weight in the class or collective arbitrability context. *See, e.g., Chesapeake Appalachia*, 809 F.3d at 764.

arbitrator it had agreed to be bound by his decision, stating that "the parties asked [the arbitrator] to answer" the question over the arbitrability of Mr. Conrad's claims as a collective action. (Dkt. Entry 17 at 2) To clarify, Mr. Conrad, not Sun Coast, asked the arbitrator for construction of the Agreement to permit collective action. *See* Ex. 3. In any event, the United States Supreme Court has been clear that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point." *First Options*, 514 U.S. at 946 (underlining added).

In sum, the Court should have resolved the disputed threshold collective arbitrability issue independently and held that the arbitrator exceeded his powers because he intruded on that issue, which was reserved for this Court.

**B.     The Arbitrator Acted Contrary to the Agreement's Express Contractual Provisions.**

Because arbitration is a matter of contract, the power and authority of the arbitrator are dependent on the provisions of the contract under which the arbitrator was appointed. *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002). When an arbitrator ignores the plain limitations of the arbitration agreement, the arbitrator has exceeded his powers and the award must be vacated. *See PoolRe Ins. Corp. v. Org. Strategies, Inc.*, 783 F.3d 256, 264 (5th Cir. 2015); *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012). Judicial deference ends when the arbitrator "has utterly contorted the evident purpose and intent of the parties." *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802–03 (5th Cir. 2013).

Here, the arbitrator exceeded his powers by acting contrary to the plain terms of the Agreement, which contemplate individual, bilateral arbitration. The arbitrator ignored numerous provisions demonstrating the parties' purpose and intent to engage in individual, bilateral arbitration. Among other things:

- The Agreement provides for "any controversy or claim arising out of or relating to your employment relationship" to be submitted to arbitration. *See* Ex. 1 at p. 1 (underlining added).

- The Agreement is between the individual employee and Sun Coast, *i.e.*, the "parties," and no one else. *See id.* There is no reference to employee groups, putative class members, or other employees' claims or disputes.

- The Agreement provides that the arbitrator is to be "jointly selected by you and Sun Coast." *See id.* The Agreement does not provide an individual employee the right to select the arbitrator for other employees.

- The Agreement repeatedly references the individual employee, *i.e.*, "you," in the singular, and his rights, duties, obligations, benefits. *See id.* at p. 1–4.

- Before an employee can compel arbitration with Sun Coast, the Agreement requires the individual employee to make "good faith efforts at resolving any dispute internally" and that effort must fail. *See id.* at p. 2.

- The Agreement's time limits and procedures provide that "the aggrieved party must give written notice" to the other "within six (6) months of the date the aggrieved first knew or should have known of the facts giving rise to the claim." *See id.* at p. 3. These procedures necessitate individual action and limitations—not collective or class actions of employees that gave no written notice of a claim.

- The Agreement expressly excludes only those type of claims that cannot be waived as a matter of law and thus would not include collective arbitration which can be arbitrated if the parties agreed to authorize it. *See id.* at p. 2.

These provisions make clear the Agreement pertains to arbitration between the individual employee and Sun Coast. The arbitrator's inference of an agreement to collective arbitration (and inference of an agreement for him to decide that issue) lacks any contractual basis whatsoever. Accordingly, his award should be vacated for this additional reason. *See, e.g., Chesapeake Appalachia L.L.C. v. Scout Petroleum, LLC*, 727 F. App'x 749, 751 (3d Cir. 2018) (affirming district court's vacatur of arbitration panel's clause construction decision because, even "assuming that class arbitration may be permitted without express authorization in a contract" in contravention of Third, Fifth Sixth, Seventh, and Eighth Circuit precedent, "we find this arbitration

clause does not imply the parties' intent to authorize class arbitration").

### III. Conclusion

For the foregoing reasons, Sun Coast respectfully requests that this Court reconsider its December 21 opinion and judgment confirming the arbitration award and vacate the award. Sun Coast further requests any other relief to which it may be justly entitled.

Respectfully submitted,

FOLEY & LARDNER LLP

*/s/ Cristina Portela Solomon*
CRISTINA PORTELA SOLOMON
Federal I.D. No.: 6089
Texas Bar No. 16143400
csolomon@foley.com
JASON SHARP
Federal I.D. No.: 34717
Texas Bar No. 24039170
jsharp@foley.com
2000 Wells Fargo Plaza
1000 Louisiana Street
Houston, Texas 77002
Telephone: (713) 276-5500
Facsimile: (713) 276-5555

WRIGHT CLOSE & BARGER LLP

Jessica Z. Barger
Federal I.D. No.: 2907402
State Bar No. 24032706
Raffi Melkonian
Federal I.D. No.: 2338805
State Bar No. 24090587
Brian J. Cathey
Federal I.D. No.: 1531850
State Bar No. 24080825
One Riverway, Suite 2200
Houston, Texas 77056
Tel. 713.572.4321
Fax 713.572.4320
barger@wrightclosebarger.com

melkonian@wrightclosebarger.com
cathey@wrightclosebarger.com


ATTORNEYS FOR SUN COAST
RESOURCES, INC.


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served on this the 18th day of January, 2019, to:

ROBERT R. DEBES, JR.
Texas Bar No. 05626150
bdebes@eeoc.net
RICARDO J. PRIETO
Texas Bar No. 24062947
rprieto@eeoc.net
SHELLIST, LAZARZ, SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
Telephone: (713) 621-2277
Facsimile (713) 621-0993

ATTORNEYS FOR CLAIMANT &
CLASS MEMBERS


*/s/ Cristina Portela Solomon*
Cristina Portela Solomon